UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

AMANDA WEST, individually and on behalf of all others similarly situated,

          Plaintiffs,

v.

EXAMSOFT WORLDWIDE, INC., a Florida corporation,

          Defendants.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

     Plaintiff, Amanda West ("Plaintiff") brings this action against ExamSoft Worldwide, Inc. ("Defendant" or "ExamSoft") for its deceptive trade practices regarding its SofTest program used for state bar exams, on behalf of herself and all others similarly situated, and make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record:

**PRELIMINARY STATEMENT**

     1.     ExamSoft is a computer software corporation specializing in computerized assessment and assessment administration programs.

     2.     ExamSoft explains that it "was founded in 1998 to give exam takers the convenience of using their own computers to take their exams, while providing administrators the comfort of knowing exam integrity would be maintained. We're committed to providing the

best computer-based testing technology on the market and improving the exam experience for everyone involved." <http://learn.examsoft.com/exam-takers> (last visited, Aug. 9, 2014).

3. ExamSoft offers assessment-management software that supports the entire testing process, including exam creation, administration, delivery, scoring, and analysis.

4. ExamSoft's Uploading Network ("ExamSoft's Uploading Network") includes its website, it software programming, it servers, its databases, and other computer components.

5. ExamSoft is the main provider of bar exam software for nearly ninety percent of the country. When exam takers are finished with the written portion of the bar test, they use the "SofTest" program to upload their bar answers to Defendant ExamSoft's Uploading Network. It charges fees up to $150.00 for exam takers to use this SofTest program.

6. The Board of Law Examiners in many states contracts with ExamSoft to provide technology in administering its bar exams.

7. ExamSoft claims that "SofTest is a high stakes assessment program developed and licensed by ExamSoft that enables applicants to securely take examinations downloaded to their own laptop computers by blocking access to files, programs and the Internet during the bar exam." <http://go.examsoft.com/barexam> (last visited Aug. 9, 2014).

8. ExamSoft makes the following representations about "SofTest": "Taking some of the stress out of the examination process" and "You focus on the test. We'll focus on the rest." <http://learn.examsoft.com/exam-takers> (last visited Aug. 9, 2014). It also identifies the following key benefits for exam takers include that you can: "use your own laptop; organize your thoughts quickly and efficiently; type your answers instead of writing them by hand; easily navigate the exam and tag your answers for review, and **take some of the stress and fatigue out of exam day**." (*Id.*)

9. In touting the reliability of SofTest, ExamSoft claims that "[o]ver 8,000,000 exams have been successfully administered using SofTest. SofTest is used by over 43 State Supreme Courts for delivery of the Bar and Legal Specialization exams and at almost 600 colleges and universities." (http://go.examsoft.com/barexam, last visited, August 9, 2014).

10. Nevertheless, despite ExamSoft's representation about its software, ExamSoft users experienced a severe technical breakdown on or about July 29, 2014, leaving Plaintiff and the members of the Class alleged herein unable to upload their bar exam and, therefore, unable to complete that part of the bar exam.

11. At all times relevant to this Complaint, ExamSoft knew the precise number of people who had paid for and installed the SofTest program in order to take their respective state bar exams on July 29, 2014.

12. Plaintiff and Class were told that **they had to upload their exam answers by a time certain.  If they did not upload their exam answers within this deadline they would receive a zero for that portion of the bar exam**.

13. When plaintiff and class members finished the written part of the bar exam and tried to upload their responses to the exam, following the instructions provided by exam soft, Plaintiff and the Class was met with the below error message:



14. In addition to this error message, exam takers were given confusing and/or contradictory emails about whether their answers had been uploaded.  Plaintiff and the Class also had a complete inability to verify whether their exams were submitted before state-mandated deadlines.

15. The bar associations in nearly twenty states were left with no choice but to extend their submission deadlines.

16. The ExamSoft Uploading Network crashed because it had an insufficient infrastructure and/or lack of servers or server space to process the foreseeable number of exam takers who were uploading their exams on or about July 29, 2014, and as a result, were unable to process the thousands of bar exam answers in a reliable and timely way.

17. ExamSoft knew exactly how many applicants were going to take the July 2014 exam, but failed to design, maintain and / or improve the infrastructure of its ExamSoft Uploading Network to sufficiently and adequately service the applications, including by failing to add more servers or allocating enough server space to handle the increased submissions from exam takers.

18. As a result of ExamSoft's failure to have a properly functioning upload network, Plaintiff and the Class did not receive what they paid for and, instead, spent valuable preparation and / or relaxation time in between exam days contending with the technical problems created by ExamSoft's wrongdoing.

19. Plaintiff and the Class paid ExamSoft for a program intended to and advertised as though it would allow for the convenient and timely submissions of bar exam responses.

20. ExamSoft's program did not work, did not deliver the promised representations, and Plaintiff and Class were deprived of the significant value of the product they paid for.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction in this action under 28 U.S.C. § 1332(d)(2) because this is a class action in which the matter in controversy exceeds $5,000,000, there are in excess of 100 class members, and some members of the Class are citizens of states different from Defendant.

22. This Court has personal jurisdiction over Defendant because Defendant is a Florida corporation and is authorized to conduct, has conducted, and does conduct business within the State of Florida and within this judicial district.

23. Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district and Defendant resides and has its principal place of business in this district.

## PARTIES

24. Plaintiff, Amanda West, is a resident and citizen of the State of Minnesota.

25. Defendant, ExamSoft Worldwide, Inc., is a corporation existing under the laws of the State of Florida with its principal place of business located at 6400 Congress Avenue, Suite 1050, Boca Raton, Florida 33487.

26. Defendant regularly conducts business throughout this District, the State of Florida, and the United States.

## FACTUAL BACKGROUND

27. Plaintiff paid ExamSoft money to download and use SofTest to take the written portion of the state bar exam.

28. Plaintiff took the first day portion of the Minnesota State bar exam on or about July 29, 2014.

29. When Plaintiff attempted to submit her bar exam responses, SofTest failed to work.

30. Because Plaintiff could not upload her exam responses prior to the original state-imposed deadline because of ExamSoft's wrongdoing, Plaintiff was damaged in that she did not receive the actual value of what she paid for the SofTest product.

31. Plaintiff reasonably relied upon ExamSoft's omissions regarding SofTest's utility; namely, that SofTest would not allow Plaintiff to submit his bar exam responses in a timely manner upon finishing the bar exam. But for these omissions, Plaintiff would have not paid ExamSoft any money to use SofTest and would have instead opted to write and submit his exam responses by hand.

5

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class and Subclass defined as follows:

> *Class*: All individuals in the United States who (1) took the bar exam on July 29, 2014; and (2) who paid to use ExamSoft's SofTest product to submit their bar exam responses.
>
> *Minnesota Subclass*: All individuals in the Class who are domiciled in the State of Minnesota.
>
> Excluded from the Class and Minnesota Subclass are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person; and (5) Plaintiff's counsel and Defendant's counsel.

33.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder of all members would be impracticable.  Plaintiff reasonably estimates that there are thousands of purchasers of ExamSoft's SofTest product.

34.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

   a.     Whether Defendant has engaged in unfair, deceptive, untrue, or misleading advertising;

   b.     Whether Defendant has violated Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.201, *et seq.* (the "FDUTPA");

   c.      Whether Defendant has been unjustly enriched;

   d.     Whether the members of the Class have been injured by Defendant's conduct;

    e. Whether Plaintiff and the Class are entitled to relief, and the amount and nature of such relief; and

    f. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

  35. <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendants' unlawful conduct.

  36. <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

  37. <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

  38. <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendant's omissions are uniform as to all members of the Class.  Defendant has refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## COUNT I

## Violation of Florida Deceptive and Unfair Trade Practices Act

### (On Behalf of Plaintiff and the Class)

  39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

  40. Plaintiff brings this claim individually and on behalf of the Class.

41. The FDUTPA was enacted to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

42. Plaintiff and the Class are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

43. Defendant violated and continue to violate the FDUPTA by engaging in the described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.* Defendant's described affirmative misrepresentations, omissions, and practices were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

44. Defendant violated the FDUPTA by omitting the fact that the SofTest program would not allow consumers—including Plaintiff and the Subclass—to upload their responses in a timely and reliable manner. Defendant intended that Plaintiff and the Subclass rely on its omissions.

45. ExamSoft's ability to reliably and timely upload exam responses was a material selling point of the SofTest program, and a key reason to purchase Defendant's products over other alternatives (such as choosing to hand write exam responses).

46. Had Plaintiff and the Class known of Defendant's inability to upload their exam results in a timely and reliable manner they would not have purchased the SofTest program.

47. By omitting the fact that its product would not act in a reliable and timely manner in uploading exam results, Defendant violated the FDUPTA.

48. Based upon Defendant's omissions described herein, Plaintiff and the Class reasonably expected that the SofTest program would reliably and timely upload their exam results.

49. Plaintiff and the Class reasonably relied upon Defendant's omissions in paying to purchase Defendant's SofTest program and using it on Exam Day.

8

50. Defendant's omissions regarding SofTest's ability to reliably and timely upload exam results was an act likely to mislead Plaintiff and the members of the Subclass acting reasonably under the circumstances, and constitutes an unfair and deceptive trade practice in violation of the FDUPTA.

51. Defendant knew or should have known that it had kept highly relevant and material information—namely, information regarding how ill-prepared for Exam Day the SofTest product was—from its customers, and therefore violated the FDUPTA.

52. As a direct and proximate result of Defendant's violation of the FDUPTA, Plaintiff and each Class Member have suffered harm in the form of monies paid to Defendant.

53. Plaintiff and the Class also seek equitable relief and to enjoin Defendants on the terms that the Court considers reasonable.

54. In addition, Plaintiffs and the Class seek reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT II

### For False and Misleading Advertising, Fla. Stat. § 817.41

### (On Behalf of Plaintiff and the Class)

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. On its website and in connection with consumers' downloading of SofTest, Defendant falsely advertised SofTest as reliable and as a means of lessening, rather than increasing, the stress associated taking with bar exams.

57. Defendant knew, or in the exercise of reasonable diligence, should have known, that these statements were false.

58. Defendant made these statements for the purpose of selling property, and intended that boards of law examiners and test takers alike rely upon them in purchasing SofTest.

59.     Plaintiff and Class members did in fact rely upon these statements, and such reliance was reasonable and justified, given ExamSoft's self-professed reputation for reliability and endorsement by boards of law examiners.

60.     As a result of Defendant's misrepresentations, Plaintiff and Class members suffered damages in the amount paid for SofTest.

61.     Plaintiff and Class members are entitled to damages, injunctive relief, costs, and fees, as set forth below.

## COUNT III

**Violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69**

**(On Behalf of Plaintiff and the SubClass)**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     Plaintiff's claim inures to the public benefit, and so under Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, Plaintiff is authorized to bring action under § 325F.69 to recover damages, costs, and disbursements, including reasonable attorney's fees.

64.     Minn. Stat. § 325F.69, subdivision 1 (2008) provides: "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70."

65.     Defendant's SofTest program and service of uploading exam bar answers both of which fall within the meaning of "merchandise" under Minn. Stat. § 325F.68, subd. 2.

66.     Material omissions stand as violations of Minnesota's consumer protection statutes. Plaintiff and class members need not affirmatively establish subjective reliance upon an omission.

67. As described more fully herein, Defendant omitted the fact to Plaintiff and the SubClass that the SofTest program would not allow consumers to upload their bar responses in a timely and reliable manner and/or ExamSoft's Uploading Network lacked sufficient capacity (servers and/or server space) to timely and reliably upload Plaintiff and the Sub Class's bar answers.

68. As a direct, proximate and foreseeable result of Defendant's conduct, Plaintiff and SubClass members sustained damages and are entitled to injunctive and equitable relief and an award of attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT IV

### Violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13

### (On Behalf of Plaintiff and the SubClass)

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. Plaintiffs' claim inures to the public benefit, and so under Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, Plaintiffs are authorized to bring action under § 325D.13 to recover damages, costs, and disbursements, including reasonable attorney's fees.

71. Minnesota Statutes § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." Consumer protection laws of other states make similar conduct unlawful.

72. Defendant misrepresented (*i.e.*, by omission) the true quality of its SofTest program and ExamSoft's Uploading Network; that is, it material omitted that its SofTest program would not allow consumers to upload their bar responses in a timely and reliable manner, as explained above, constituting unlawful trade practices in violation of Minn. Stat. § 325D.13.

73. As a direct, proximate and foreseeable result of Defendant's conduct in violation of Minnesota's Unlawful Trade Practices Act, Minn. Stat. § 325D.13, Plaintiff and SubClass members sustained damages and are entitled to injunctive and equitable relief and an award of attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT V

### Violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44
### (On Behalf of Plaintiff and the Class)

74. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75. This cause of action is for deceptive trade practices as listed above, pursuant to Chapter 325D, Section 44, of the Minnesota Statutes.

76. Plaintiff's claim inures to the public benefit, and so under Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, Plaintiff is authorized to bring action under § 325D.44 to recover damages, costs, and disbursements, including reasonable attorney's fees.

77. In the course of it business, Defendant is representing that its goods have characteristics, ingredients and benefits that they do not have, and is representing that its goods are of a particular standard, quality or grade, of which they are not. ExamSoft represented to Plaintiff and the Class that its SofTest program would allow consumers to upload their bar responses in a timely and reliable manner when that was not the case because ExamSoft's Uploading Network was entirely insufficient for reasons stated herein.

78. Defendant's acts constitute Deceptive Trade Practices in violation of Chapter 325D, Section 44, of the Minnesota Statutes SofTest program, and Plaintiff and the SubClass are entitled to injunctive relief and to monetary damages in an amount as yet undetermined but to be proven at trial.

79. Plaintiff has no adequate remedy at law, and Defendant's acts will cause Plaintiff to suffer irreparable harm, and Plaintiff will continue to be irreparably harmed, unless and until

Defendant's use is enjoined by this Court pursuant to Chapter 325D, Section 45, of the Minnesota Statutes.

80. Defendant's acts are willful, and Plaintiffs are entitled to costs and reasonable attorneys' fees pursuant to Chapter 325D, Section 45, of the Minnesota Statutes in an amount to be determined at trial.

## COUNT VI

### Breach of Contract

### (On Behalf of Plaintiff and the Class)

81. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82. In order to download and use Defendant's SofTest product, Plaintiff and the Class entered into a contract whereby they would pay Defendant money and Defendant agreed to provide a product that would timely and reliably upload bar exam results.

83. Defendant materially breached this contract by failing to provide a product that timely and reliably uploaded Plaintiff and Class members' bar exam answers. Plaintiff and Class members fully performed their portion of the contract by paying Defendant the listed sale price for the SofTest program.

84. As a direct and proximate result of Defendant's misconduct and breach of contract, Plaintiff and Class members suffered harm in the form of monies paid. Plaintiff and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid money.

## COUNT VII

### Unjust Enrichment (in the alternative to Breach of Contract)

### (On Behalf of Plaintiff and the Class)

85. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86. Should the contract between Plaintiff and the Class on the one hand, and Defendant on the other, be found void or unenforceable, Plaintiff and members of the Class will have no adequate remedy at law.

87. Defendant knowingly profited from the sale of its SofTest program to Plaintiff and Class members.

88. Plaintiff and the Class conferred a benefit upon Defendant. Defendant received and retained money belonging to Plaintiff and the Class as a result of its unlawful conduct described herein.

89. Defendant appreciates or has knowledge of the benefit conferred upon it by Plaintiff and the Class.

90. Under principles of equity, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class that it unjustly received as a result of its unlawful conduct described herein.

91. Plaintiff and the Class have suffered financial loss as a direct result of Defendant's unlawful conduct described herein.

92. Plaintiff, on his own behalf and on behalf of the Class, seeks restitution of the proceeds Defendant received as a result of its unlawful conduct described herein, as well as attorneys' fees and costs.

## COUNT VIII

## NEGLIGENCE

**(On Behalf of Plaintiff and the Class)**

93. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94. By accepting payment from Plaintiff and the Class, Defendant assumed a duty to operate its ExamSoft's Uploading Network for its SofTest program, so that Plaintiff and Class could timely and properly upload their exam answers for the respective state bars.

95. Defendant owed a duty to Plaintiff and the Class to use and exercise reasonable and due care in the creation and maintenance of the infrastructure for ExamSoft's Uploading Network for its SofTest program, including having the website, servers, and other components necessary to timely upload the expected number of Plaintiff and Class Members' exam answers.

96. Defendant breached its duties by failing to adequately design, maintain, update or improve its systems, including but not limited to having an inadequate infrastructure and/or lack of servers and/or server space for the foreseeable number of exam answers that were uploaded on or about July 29, 2014, and as a result, Plaintiff and the Class were unable to upload in a timely fashion their answers to the bar exam.

97. Defendant knew, or, with the reasonable exercise of care, should have known, of the risks inherent in running ExamSoft's Uploading Network to upload the foreseeable number of exam takers are answers.

98. As a direct and proximate result of Defendant's carelessness and negligent conduct, Plaintiff and the Class suffered a substantial failure in their functional use of Defendant's product that they paid substantial money for.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class and SubClass proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class and SubClass, as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B. Ordering Defendant to pay actual damages and equitable monetary relief to Plaintiff and the other members of the Class, in amount equal to the amounts of money paid by Plaintiff and the member of the Class;

C. Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendant to

engage in a corrective advertising campaign;

    D.    Ordering Defendant to pay attorneys' fees and litigation costs;

    E.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

    F.    Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of their claims to the extent authorized by law.

Dated: August 12, 2014

/s/ John A. Yanchunis
John A. Yanchunis, FBN: 0324681
E: JYanchunis@ForThePeople.com
Tamra C. Givens, FBN: 657638
E: TGivens@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 223-5505; F: (813) 223-5402

Counsel for Plaintiff, Amanda West